**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| **MICHAEL D. GOON,** <br><br>    Plaintiff, <br><br>   vs. <br><br>**MICHAEL COLEMAN,** in his individual and official capacities; and his marital community or domestic partnership**; WASHINGTON STATE DEPARTMENT OF CORRECTIONS;** and **STATE OF WASHINGTON,** <br><br>    Defendants. | Case No.: 2:18-CV-01445-JLR <br><br> **AMENDED COMPLAINT** |

Plaintiff **MICHAEL D. GOON,** through attorney of record **ADAM P. KARP** of **ANIMAL LAW OFFICES,** alleges:

**I. JURISDICTION AND VENUE**

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1367; and venue is properly set in the United States District Court for the Western District of Washington pursuant to 28 U.S.C. § 1391.

2. The causes of action arise from factual allegations occurring in this judicial district.

3. Each of the named Defendants is situated in this judicial district.

4. Plaintiff **MICHAEL D. GOON** ("Goon") resided in King County, State of Washington, during the time of the events described herein.

**AMENDED COMPLAINT** - 1
[2:18-CV-01445-JLR]

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

5. Now-deceased, five-year-old neutered male dog, named **SHILO,** was regarded by Goon as his sentient personalty and immediate family member.

6. Defendant **STATE OF WASHINGTON** operates the **WASHINGTON STATE DEPARTMENT OF CORRECTIONS** ("DOC"), the entity for which **COLEMAN** worked during the incident complained of.

7. Defendant **MICHAEL COLEMAN** ("Coleman") is, and at all germane times was an employee and/or agent of DOC acting within the course and scope of his employment for purposes of state law, and under color of state law for purposes of federal law. He is being sued in his personal and official capacities. The marital or domestic partnership community of **COLEMAN** has also been sued on the basis that the acts of Coleman enriched the marital or domestic partner community. Should such community not exist, Coleman is sued individually.

8. Goon's claim for attorney's fees and costs is authorized by, *inter alia*, 42 U.S.C. § 1988. No administrative claim filing or other pre-litigation requirements apply to his claims against Coleman, DOC, and State of Washington under 42 U.S.C. § 1983.

9. On or about May 4, 2018, the State of Washington Department of Enterprise Services – Office of Risk Management ("ORM") was duly served with a *Washington State Tort Claim Form* on behalf of Goon in full compliance with state claim-notice laws. The ORM assigned claim number 31086171. More than sixty days have elapsed since Goon filed his claim with the State.

10. This court has personal jurisdiction over the Defendants.

## II. GENERAL ALLEGATIONS

11. On November 30, 2017, Goon owned Shilo and resided with him, his partner Leanne Taylor, and her brother Robbert Taylor at 27408 220th Pl. SE, Maple Valley, WA.

**AMENDED COMPLAINT** - 2
[2:18-CV-01445-JLR]

ANIMAL LAW OFFICES OF
ADAM P. KARP, ESQ.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

12. On this date, DOC Officer Coleman and DOC Officer Holden Wilkinson came to Goon's premises not in response to a 911 call, nor to execute a warrant, nor to make an arrest, nor to investigate allegations of misconduct by Shilo or any resident therein. Rather, they arrived for an ORP investigation relative to Ryan Rodarte (DOC 394969), Ms. Taylor's son, who was to be work released to Goon's residence.

13. They appeared unannounced, at an unexpected time, and without any opportunity for Goon or Ms. Taylor to either be home or to ensure that Shilo was away at the time of the contact.

14. DOC knew, and Coleman knew or should have known, that Shilo was on premises before contact was made on November 30, 2017 as prior to this date, Ms. Taylor spoke by phone to a DOC representative, who asked if they had a dog and what breed. Ms. Taylor explained that they had rescued Shilo, a blue-nosed pit bull terrier type dog, when he was four months of age. The representative told Ms. Taylor that information would be mailed to her about the upcoming visit and a field officer would be in further contact in the next few weeks to schedule the actual inspection. Ms. Taylor and Goon received the letter but no person ever made further contact. Instead, Wilkinson and Coleman simply appeared without warning on November 30, 2017.

15. Further, there is reason to believe that Wilkinson and Coleman had been to the Goon residence a few days before, when Shilo no doubt would have been barking from inside, as Coleman's business card was left at the front door. It did not specify when DOC would return or indicate that Goon or Ms. Taylor should call back to schedule a time when they would be home.

16. As captured by video, Wilkinson and Coleman entered the driveway in an unmarked car and in street clothes on November 30, 2017. At about 10:52:30, Coleman opened a

**AMENDED COMPLAINT** - 3
[2:18-CV-01445-JLR]

Animal Law Offices of
Adam P. Karp, Esq.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

closed chain link gate to enter the fenced front yard and pass down the walkway toward Goon's front door.

17. Shilo's barking alerted Mr. Taylor to the presence of Wilkinson and Coleman. Mr. Taylor opened the sliding glass door and saw two males on the porch. As he stepped out onto the porch, Shilo left the residence to greet Wilkinson and then continued to greet Coleman.

18. About thirty seconds after Wilkinson and Coleman passed through the gate, Coleman discharged his firearm twice at Shilo, causing his death.

19. The first shot penetrated Shilo's right tarsus, traveling 43° leftward and 8° downward, exiting his body into the second riser leading to the elevated porch toward Goon's front door. This shot caused Shilo to yelp in pain and try to run away.

20. Shilo fled into the front yard, but as he passed Coleman, a second shot was fired, passing through Shilo's thorax. This shot mortally wounded Shilo by penetrating the left shoulder, traveling front to back, 37° rightward, 11° downward, about 1.5' through his body, puncturing his right lung and lodging in his muscle tissues.

21. At the time of the shooting, Mr. Taylor was present and obviously desirous of regaining control of Shilo. Although not his owner, he was mere feet away at the time and could have been shot by Coleman's uncontrolled and feverish response.

22. Shilo's slaying occurred on private property, behind a closed gate, at a time when Wilkinson and Coleman were not invited guests and had no permission to enter or approach the front door, and while a caretaker for Shilo was present.

23. Coleman failed to use less-lethal force and had plenty of time and notice to do so—based on DOC's prior conversation with Ms. Taylor, visiting the premises (again without permission) days prior, and otherwise hearing Shilo. In this respect (among others), his actions

**AMENDED COMPLAINT** - 4
[2:18-CV-01445-JLR]

Animal Law Offices of
Adam P. Karp, Esq.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

therefore fell below the standards expected of a prudent law enforcement officer.

24.     Given that Coleman confirms having fired only twice, and given the presence of a bullet in the second riser of the steps leading to Goon's front door, it follows that the ankle shot came <u>first</u>, passing through Shilo's body and into the stairs; the <u>second</u> shot entered Shilo's thoracic cavity, killing him at a time when Shilo was clearly not running directly at Coleman. The trajectory confirms he was actually trying to evade Coleman when fired upon. The video of the encounter bolsters this interpretation.

25.     Wilkinson was closest to Shilo at the time he emerged from the residence. But instead of drawing a firearm, he wielded a nonlethal Taser. Further, he did not discharge it, but let Shilo run past without incident. In an amazingly reckless maneuver, however, Coleman discharged his firearm in the general direction of not only his partner, but also Mr. Taylor, placing both in likely apprehension of being shot.

26.     This is sadly consistent with Coleman's behavior five months prior on June 8, 2017 at the residence of Christopher Linville, 27319 220th Pl. SE, Maple Valley (which happens to be a few doors down from Goon). On that occasion, Wilkinson discharged his Taser at the same time Coleman discharged his firearm at Tuco, a dog he claimed was about to lunge at Wilkinson. When he fired the weapon, he jeopardized the safety of not only Wilkinson, but other individuals who were within close range. He also missed. Further, it was unnecessary as the Taser sufficed (with two cyclings) to neutralize Tuco's aggression. Wilkinson documented what he called "attack indicators" and found none in a second dog on scene (tail wagging, no barking, no bared teeth, calm demeanor, no hair on back on end, not jumping/lunging).

27.     Wilkinson did not document any attack indicators for Shilo, and he does not mention in his report a rigid tail, barking, baring teeth, jumping, lunging, or raised hackles.

**AMENDED COMPLAINT** - 5
[2:18-CV-01445-JLR]

Animal Law Offices of
Adam P. Karp, Esq.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

28. Coleman's report makes no mention of Shilo having a stiff tail, barking, lunging, baring teeth, jumping, or hackles, either. Coleman thus imagined motivations that were not verified by objective facts. Notably, though within arm's reach of Shilo, at no time does he allege that Shilo tried to bite at or jump on him or Wilkinson. Instead of just petting him or stepping aside (as Wilkinson did), he loses control and retreats in a hysterical panic. The entire fiasco was avoidable had Coleman used common sense and opted for a less-lethal weapon (or even a flashlight, baton, or OC spray) instead of a deadly firearm. One would think he would have learned from the Tuco incident.

29. DOC Policy 410.920(II)(B)(1)(a) states that "OC and/or an ECD may be used to defend against animal attacks." OC means Oleoresin Capsicum and ECD means Electronic Control Devices used in Drive Stun mode.

30. Coleman was trained in the use of OC on 11/3/11, 8/23/10, 9/14/09, and 9/29/08.

31. Coleman was trained in the use of ECDs such as a Taser on 6/9/15 and 6/12/14.

32. DOC investigated Shilo's shooting but did not discipline Coleman. Indeed, he received backpatting and sympathy from such DOC officials as Assistant Secretary of Community Corrections Mac Pevey, who offered all the concern in the world for Coleman's emotional fragility after he shot a beloved dog without justification but no compassion for Goon, thereby proving State condonation of his unconstitutional behavior.

33. Several witnesses will testify that Shilo had never even so much as growled at a person before. Frequenting off-leash dog parks, including in Maple Valley's Lake Wilderness Park, encountering thousands of people and dogs with no hint of aggression, it will be evident that it is Coleman who has a violent propensity, not Shilo.

34. Goon adopted Shilo from Motley Zoo Animal Rescue on May 12, 2012. He and

**AMENDED COMPLAINT** - 6
[2:18-CV-01445-JLR]

Animal Law Offices of
Adam P. Karp, Esq.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

his partner Leanne Taylor met Shilo at the Redmond Senior Center, where he sat patiently and curiously in his cage at the pet fair. Their eyes connected, and the adoption of the then-puppy was a foregone conclusion. Shilo became the glue of the family, including Leanne's daughter Rhegan, who stayed with her grandmother and missed school for a week after Shilo's death because it was too painful to come home.

35.   Shilo was Goon's *raison d'etre,* his rock. Less than one week before Shilo's death, Goon told his mother that when Shilo goes, it might just kill him. Shilo was the one being he absolutely needed in his life. In addition to caring for Shilo for six years, and Ms. Taylor buying him clothes and winning him toys from claw machines, Goon bought him a $2000 swim spa that, regrettably, he never got to use, and an 18' x 9' swimming pool so he could swim daily during the two summers before his death.

36.   Leaving the house without Shilo caused Goon and Ms. Taylor to suffer separation anxiety. They perseverated over whether he were OK, even if gone for a few hours. On coming home, they almost immediately would lie on the floor with him or find him a treat and yell "Brunken Bronco!" as he galloped around in playful exuberance. Shilo never left their side, even sleeping with them at night. Frequently, when Goon awakened and did not on rare occasion see Shilo, he would find him and keep him close.

37.   Shilo was well socialized. He welcomed guests on two or four legs, including Goon's employees and deliverypersons visiting the house daily. Shilo looked forward to meeting new people and loved going to Home Depot, Johnson's Home improvement, Mud Bay, and Kason's Pet Supply. Basically everywhere he was well-received and highly socialized to humans. While they took him to many dog parks, where he would occasionally be ambushed by aggressive dogs, he never engaged and never bit anything or anyone. He was admired by almost

**AMENDED COMPLAINT** - 7
[2:18-CV-01445-JLR]

Animal Law Offices of
Adam P. Karp, Esq.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

all other pet owners for his gentle and playful nature. Shilo's favorite activity was swimming at the lake or diving for rocks. He would swim out to the middle of the lake, splash about, and make circles, treading for up to an hour. When water was near, he ignored people, dogs, and birds to feverishly hunt rocks at the lake's bottom.

38. Goon and Ms. Taylor vacationed rarely without him. Goon even rented a car in the summer of 2015 to drive to Vermont for a family reunion just so he could come with. His family looked forward to his arrival as if Shilo were Goon's child. When they stopped at Niagara Falls, you would have thought he was the main attraction. People (mostly children) swarmed to greet him and to have their picture taken with him; he was a perfect gentleman. While walking the streets of New York where there was limited dog space and the pavement was 100+ degrees, Ms. Taylor and Goon took turns *carrying* their baby as his paws were already damaged by the zebra clams in Lake Champlain.

39. When it came to Shilo's health, Goon spared no expense. He and Ms. Taylor made several trips to the veterinarian for well checks, once to have a fatty tumor removed and biopsied, and stitches on his neck when he was attacked by another dog. Goon only bought Acana's grain free food at $65 a bag, supplemented with all-natural canned food from Mud Bay.

40. Shilo and Goon would trail walk a few times a week off-leash, and Ms. Taylor loved taking Shilo to Lake Wilderness Park to swim. Even at Marymoor's 40-acre off-leash dog park, Shilo never was more than a stone's throw away. He would run down the trail and stop to turn around to make sure Goon was keeping up, then make a beeline for the water. Of the hundreds of dogs there, he was always the best swimmer, swimming circles in the middle while other canines would hang out at the shore. It was the only time he would not respond immediately when called, which made Goon laugh: a stubborn child doing the thing he loved

**AMENDED COMPLAINT** - 8
[2:18-CV-01445-JLR]

Animal Law Offices of
Adam P. Karp, Esq.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

most.

41.     Shilo served as a therapy dog to Ms. Taylor, a trait that Goon valued because of his love for Taylor.

42.     Goon retained tissue samples from Shilo in order to begin the process of cloning, at an expense of $50,000. While it will not produce a perfect simulacrum of Shilo, it is nonetheless an effort to mitigate the tremendous loss suffered.

43.     Goon lost the intrinsic value of Shilo, based on his unique qualities, characteristics, behaviors, personality, training, and bond, as well as the loss of his utility, companionship, love, affection, protection, and solace.

44.     At the time of his death, Shilo had no fair market value and could not be replaced or reproduced. Any reasonable person in Goon's position would not willingly have sold Shilo at the time just prior to Shilo's death. At that moment, and thereafter, Shilo had an immense intrinsic value to Goon.

45.     Shilo and Goon formed a strong relationship, causing Shilo to fundamentally change under his care. Shilo was a close family companion and had special value, aiding Goon in his enjoyment of life, well-being, growth, development, work and/or daily activities.

46.     Goon experienced severe emotional distress from the acts and omissions identified herein.

### III. CLAIMS FOR RELIEF

47.     Defendants are liable to Goon based on the following legal claims and doctrines, stated in the alternative under FRCP 8(d)(2), and based on vicarious liability for pendent state claims (e.g., *respondeat superior* [imputing fault to State based on acts and omissions of Coleman and other State employees]).

**AMENDED COMPLAINT** - 9
[2:18-CV-01445-JLR]

48. All allegations above are incorporated by reference and reasserted as to the claims below.

## FEDERAL CLAIMS

49. **FIRST CLAIM (Coleman)** – Violation of Federal Constitutional Guarantees (42 U.S.C. § 1983), as to Coleman, whose actions were taken under color of law, violating clearly established rights, of which a reasonable person would have been aware at the time those actions of omission and commission were taken by him. Coleman unlawfully and unconstitutionally seized Goon's personalty, to wit, Shilo, by shooting same, in violation of the Fourth Amendment to the United States Constitution.

## PENDENT STATE CLAIMS (COLEMAN and STATE/DOC)

50. **SECOND CLAIM** – Conversion and/or Trespass to Chattels arising from the intentional and wrongful exertion of unauthorized dominion and control over Shilo in a manner inconsistent and severely intermeddling with Goon's right to use, control and benefit from Shilo, resulting in his injury and death.

51. **THIRD CLAIM** – Property Damage/Destruction of Shilo occasioned by gross negligence, willful misconduct, and/or recklessness.

52. **FOURTH CLAIM** – Statutory (Ch. 7.48 RCW) and/or Common Law Nuisance arising from the substantial interference with Goon's quiet use and enjoyment of his personalty and realty.

53. **FIFTH CLAIM** – Common Law Negligence resulting in the injury and death to Shilo.

54. Goon reserves the right to amend to raise additional, alternative claims for relief as discovery commences.

**AMENDED COMPLAINT** - 10
[2:18-CV-01445-JLR]

Animal Law Offices of
Adam P. Karp, Esq.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com

## **PRAYER**

WHEREFORE, Goon prays for judgment against Defendants as follows:

A.    For economic damages, representing the intrinsic value of Shilo and loss of his utility, subject to proof and modification at trial;

B.    For noneconomic damages, including emotional distress, loss of enjoyment of life, and interference with quiet use and enjoyment of personalty, subject to proof and modification at trial;

C.    For damages related to the constitutional violations asserted herein;

D.    For veterinary expenses pertaining to Shilo's post-mortem assessment, and disposition;

E.    For prejudgment interest on liquidated sums;

F.    For punitive damages against Coleman under federal law;

G.    For reasonable attorney's fees and other litigation-related costs as allowed by law under 42 U.S.C. § 1988, or, in the alternative, statutory attorney's fees;

H.    For costs of suit;

I.    For postjudgment interest at the highest rate permitted by law;

J.    For such other and further relief as the Court may deem just and proper.

K.    NOTE: Monetary damages are sought herein by Goon in a sum far greater the statutory amount set to trigger the fee-shifting statute RCW 4.84.250 *et seq.*, as amended.

Dated this October 8, 2018.

ANIMAL LAW OFFICES

*/s/ Adam P. Karp*
_____
Adam P. Karp, WSBA No. 28622
*Attorney for Plaintiff Michael D. Goon*

**AMENDED COMPLAINT** - 11
[2:18-CV-01445-JLR]

Animal Law Offices of
Adam P. Karp, Esq.
114 W. Magnolia St., Ste. 400-104 • Bellingham, WA 98225
(888) 430-0001 • Facsimile: (866) 652-3832
adam@animal-lawyer.com